IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

| | |
|---|---|
| **Montoyae Dontae Sharpe**, <br><br> Plaintiff, <br><br> v. <br><br> **R.L. "Ricky Best", Jeffrey D. Shrock & The City of Greenville, North Carolina**, <br><br> Defendants. | No. 4:21-CV-00185-BO |
| **Montoyae Dontae Sharpe**, <br><br> Plaintiff, <br><br> v. <br><br> **Carolyn Melvin**, <br><br> Defendant. | No. 4:22-CV-00088-BO |

**Order**

Defendants R.L. Best, Jeffrey D. Shrock, and the City of Greenville (collectively, the Greenville Defendants) want to review documents from the Duke University School of Law's Wrongful Conviction Clinic related to the Clinic's work on behalf of Plaintiff Montoya Dontae Sharpe. They have received many documents, but there is a dispute over whether they are entitled to receive several binders related to the Clinic's work.

The Greenville Defendants ask the court to compel Sharpe to produce these documents. They also ask for permission to subpoena the documents from the Clinic after the close of discovery. In response, both Sharpe and the Clinic claim that the documents are immune from

discovery under the work-product doctrine. The Greenville Defendants disagree, claiming that the Clinic cannot rely on the doctrine to withhold the remaining documents and, even if it can, it has waived the doctrine's protections by failing to provide a privilege log and by producing the documents to Sharpe and his current counsel.

I.  **Background**

In 1995, a North Carolina jury convicted Sharpe for the murder of George Radcliffe. Several years later, the Duke University Wrongful Conviction Clinic, at Sharpe's request, began investigating whether he was innocent of that crime. Then, in 2019, a North Carolina Superior Court overturned Sharpe's conviction and, two years later, the Governor of North Carolina pardoned him.

This lawsuit followed. Sharpe is suing the City of Greenville and various people involved in the investigation into Radcliffe's murder in connection with his allegedly wrongful conviction.

As part of discovery the Greenville Defendants sent a subpoena to the clinic in July 2022. Decl. of Jamie T. Lau ¶ 8, D.E. 47–1. That subpoena sought a copy of the Clinic's file on Sharpe's case. *Id.* The Clinic asked the court to quash that subpoena. D.E. 46. But before the court ruled on the motion, the Clinic and the Greenville Defendants reached an agreement regarding the Clinic's files. Email from Jamie Weiss to Peter Clements (Sept. 16, 2022 11:38 a.m.), D.E. 117–2 at 7; Email from Clements to Weiss (Sept. 16, 2022 11:55 a.m.), D.E. 117–2 at 7.

That agreement discussed nine binders of documents that the Clinic had inadvertently produced to Sharpe's counsel, but were withholding from the Greenville Defendants. *Id.* Sharpe's counsel returned those binders to the Clinic, without examining or copying them, because they contained protected materials. Resp. in Opp. to Mot. to Compel at 6–7, D.E. 118. The Clinic's

2

outside counsel provided the parties with a privilege log identifying, among other things, the nine binders it believed contained attorney-client communications and attorney work product. Letter from Jamie Weiss to David S. Rudolf (Sept. 22, 2022), D.E. 118–9.

Yet, according to the Greenville Defendants, during a deposition in late 2023, Sharpe relied on several previously undisclosed documents from the Clinic's files. Mem. in Supp. of Mot. to Compel at 3, D.E. 110. The Clinic had waived any work-product protections that would apply to those documents because they related to allegations made by a deponent against the Clinic's former employees. Email from Sonya Pfeiffer to Elizabeth Martineau & Peter Clements (Oct. 27, 2023 256 p.m.), D.E. 109–6 at 1.

The parties then met to discuss other outstanding discovery issues. Among the issues discussed was whether Sharpe retained any additional, unidentified documents from the Clinic. Sharpe's counsel agreed to review the documents to look for those documents. When additional, potentially privileged documents were located, Sharpe's counsel returned those documents to the Clinic. The Clinic claimed the documents were privileged and produced a privilege log. Letter from Weiss to David Rudolf (Nov. 15, 2023), D.E. 118–3 at 1.

In late-November 2023, the Greenville Defendants moved to compel Sharpe to produce the withheld documents. D.E. 109. Two months later, it asked the court to allow it to subpoena the documents from the Clinic. D.E. 122. Defendant Carolyn Melvin joined in the latter motion. D.E. 124. Both Sharpe and the Clinic oppose the Greenville Defendants' requests. The court held a hearing on these motions in March 2024.

## II.  Discussion

The Greenville Defendants are using two tools to try to obtain files from the Clinic. They ask the court to compel Sharpe to turn over documents that Clinic provided to him but that he then

3

returned. They also ask the court for leave to serve a subpoena on the Clinic itself to obtain the same documents.

In response, Sharpe and the Clinic both argue that the requested documents are immune from discovery in under the work-product doctrine. The Greenville Defendants reject this argument for two reasons. First, they claim that the Clinic cannot invoke the work-product doctrine because they were acting as investigators and not attorneys when compiling documents in the binders. Second, they claim that the Clinic waived any work product protection when it provided the documents to Sharpe.

### A. Overview of the Greenville Defendants' Motions

The court will begin by summarizing the rules underlying the Greenville Defendants' motion.

First, they moved to compel Sharpe to produce the withheld documents, which they claim respond to one of their requests for production. The Federal Rules of Civil Procedure allow a party seeking discovery to ask the court to compel other parties to comply with their obligations under the Rules. Fed. R. Civ. P. 37(a). The party resisting or objecting to discovery "bears the burden of showing why [the motion to compel] should not be granted." *Mainstreet Collection*, 270 F.R.D. at 241. To meet this burden, the non-moving party "must make a particularized showing of why discovery should be denied, and conclusory or generalized statements fail to satisfy this burden as a matter of law." *Id*.

Then they moved for leave to subpoena the documents from the Clinic. Typically, parties do not need court approval to serve a subpoena. Fed R. Civ. P. 45(a)(3). But since the discovery period ended (except for one court-ordered deposition) before they served the subpoena, the Greenville Defendants needed to establish good cause and receive the court's permission to do so.

*See* Fed. R. Civ. P. 16(b)(4). So their motion is, effectively, a motion to modify the scheduling order to allow limited additional discovery.

B.  **Overview of the Work-Product Doctrine**

At the core of this dispute is whether the documents sought by the Greenville Defendants are immune from discovery under the work-product doctrine. Under that doctrine, documents prepared "in anticipation of litigation . . . by or for another party or its representative" are generally not discoverable. Fed. R. Civ. P. 26(b)(3)(A). The party invoking the doctrine bears the burden of showing that it applies. *Sandberg* v. *Va. Bankshares, Inc.*, 979 F.2d 332, 355 (4th Cir. 1992). Meeting this burden requires making "this showing with a specific demonstration of facts supporting the requested protection, preferably through affidavits from knowledgeable persons." *E.I. Du Pont de Nemours & Co.* v. *Kolon Indus., Inc.*, No. 3:09-CV-58, 2010 WL 1489966, at *3 (E.D. Va. Apr. 13, 2010) (internal quotations omitted). Ultimately, the court's decision will turn on whether "the 'primary motivating purpose' behind the performance of the work was to assist in the pending or impending litigation." *Burroughs Wellcome Co.* v. *Barr Labs., Inc.*, 143 F.R.D. 611, 617 (E.D.N.C. 1992) (quoting *Application of Minebea Co.*, 143 F.R.D. 494, 499 (S.D.N.Y. 1992)).

Courts distinguish between two types of attorney work product: fact work product and opinion work product. Fact work product, which consists of documents that lack an attorney's mental impressions, "can be discovered upon a showing of both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship." *In re Grand Jury Proceedings #5 Empaneled Jan. 28, 2004*, 401 F.3d 247, 250 (4th Cir. 2005). The party who seeks disclosure of fact work product must show a "substantial need" for the document. *United States* v. *Bertie Ambulance Serv., Inc.*, No. 2:14-CV-53-F, 2015 WL 3932167,

5

at *7 (E.D.N.C. June 25, 2015) (citing *Republican Party of N.C.* v. *Martin*, 136 F.R.D. 421, 429 (E.D.N.C. 1991)).

Opinion work product contains an attorney's "mental impressions, opinions, and legal theories[,]" *Duplan Corp.* v. *Deering Milliken, Inc.*, 540 F.2d 1215, 1223 (4th Cir. 1976), and is "more scrupulously protected as it represents the actual thoughts and impressions of the attorney." *In re Grand Jury Proceedings*, 401 F.3d at 250. The protection also applies to materials prepared by another representative of the party. Fed. R. Civ. P. 26(b)(3). Once a document qualifies as opinion work-product it is immune from discovery, except in "very rare and exceptional circumstances." *In re Allen*, 106 F.3d 582, 607 (4th Cir. 1997).

### C. Claiming the Work Product Protection

The Federal Rules explain the two-step process to properly invoke the work-product doctrine. To begin with, the withholding party needs to "expressly make the claim" that documents are immune from discovery. Fed. R. Civ. P. 26(b)(5)(A)(i). After doing that, it must "describe the nature of the documents, communications, or tangible things" it is withholding. *Id.* 26(b)(5)(A)(ii). The description of the documents must "provide sufficient information to enable other parties to evaluate the applicability of the claimed privilege or protection." Fed. R. Civ. P. 26(b)(5) 1993 Advisory Committee Note.

Parties generally satisfy the second requirement by producing a privilege log. *Am. Soc'y For Prevention of Cruelty to Animals* v. *Ringling Bros. & Barnum & Bailey Circus*, 233 F.R.D. 209, 212 (D.D.C. 2006); *Mezu* v. *Morgan State Univ.*, 269 F.R.D. 567, 577 (D. Md. 2010). The responding party must provide the requesting party with the privilege log at or near the time it withholds the otherwise responsive documents. *See* Fed. R. Civ. P. 26(b)(5)(A); Fed. R. Civ. P.

26(b)(5) 1993 Advisory Committee Note. ("To withhold materials without such notice is contrary to the rule[.]").

To comply with the Federal Rules, a log must contain enough information to allow the requesting party to evaluate the claim of privilege. At a minimum, a log should contain "the nature of each document, the date of its transmission or creation, the author and recipients, the subject, and the privilege asserted." *See NRLB* v. *Interbake Foods, LLC*, 637 F.3d 492, 502 (4th Cir. 2011). But in the end, the sufficiency of a log will turn on whether for each document listed it contains "specific facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed." *Id.* (quoting *Bowne, Inc.* v. *AmBase Corp.*, 150 F.R.D. 465, 474 (S.D.N.Y.1993)).

Failure to comply with the dual requirements of Rule 26(b)(5)(A) can be costly. Flouting either of the Rule's requirements, "may be viewed as a waiver of the privilege or protection." Fed. R. Civ. P. 26(b)(5) 1993 Advisory Committee Note. But because of the important interests served by the attorney-client privilege and work-product doctrine, "courts generally find waiver only in cases involving unjustified delay, inexcusable conduct and bad faith." *Smith* v. *James C. Hormel Sch. of Va. Inst. of Autism*, No. 3:08-CV-00030, 2010 WL 3702528, at *5 (W.D. Va. Sept. 14, 2010) (citing cases).

### D. Whether the work-product doctrine makes the disputed documents immune from discovery

The Greenville Defendants make two arguments in support of their position. To begin with, they argue that the Clinic could not claim work-product protection for the withheld documents because those documents were created when they were acting as investigators for Sharpe, not his attorneys. Then they argue that if the doctrine applies, the Clinic has waived it by not producing a privilege log or by providing the documents to Sharpe's counsel.

Case 4:21-cv-00185-BO   Document 148   Filed 05/17/24   Page 7 of 10

In support of their argument that the work-product doctrine does not apply to the documents it seeks from the Clinic, the Greenville Defendants point to a letter that the Clinic sent to the City Attorney for Greenville in March 2005. They note that in the letter, the Clinic said, "We do not represent Mr. Sharpe as lawyers but as investigators." Letter from James E. Coleman, Jr. to William J. Little, III (Mar. 8, 2005), D.E. 109–1.

But that is not all that the letter says. It also notes that "Sharpe has authorized [the Clinic] to act on his behalf and to request documents, records, and other things relating to his conviction in the above-referenced case." *Id.* The Clinic's purpose in requesting those items "is to re-investigate the case against Mr. Sharpe, who claims he is factually innocent of the charges for which he was convicted and sentenced to prison." *Id.* It explained that it is "not investigating legal errors; rather [it is] trying to determine if there are credible facts suggesting that Mr. Sharpe is innocent." *Id.*

The problem with the Greenville Defendants' argument is that the work-product doctrine is not limited to attorney-created documents. Instead, the doctrine protects from discovery documents prepared in anticipation of litigation for "by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). The record clearly establishes that the Clinic was acting on Sharpe's behalf in investigating his claim of actual innocence. So the court rejects the Greenville Defendants' argument that the Clinic cannot invoke the work-product doctrine for the withheld documents.

The Greenville Defendants also say that Sharpe and the Clinic cannot rely on the work-product doctrine because they did not provide a privilege log. But that is incorrect. The Clinic did provide a privilege log. Admittedly, the privilege log contains little information about the withheld

8

binders. But it is not so deficient to justify waiving the privilege. So while the Greenville Defendants may have successfully sought a lesser remedy (such as supplementation of the privilege logs), they are not entitled to the relief they sought.

That leaves the Greenville Defendants' argument that the Clinic waived the protections of the work-product doctrine by providing those documents to Sharpe. At the hearing on this motion, the Greenville Defendants abandoned this argument. Hr'g Tr. at 44:5–25, D.E. 147. Thus, it does not provide a basis to grant their motion.

Having considered the arguments from the parties and the Clinic, the court concludes that the Clinic may assert that the work-product doctrine applies to the disputed documents. The Greenville Defendants have not shown that the Clinic has waived that doctrine's protections. Thus, the court denies both the motion to compel and the motion for leave to serve a subpoena.

### E.     Award of Costs

Both Sharpe and the Clinic seek an award of fees and costs in connection with these motions. Under the Federal Rules, if the court denies a motion to compel, the court "must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay . . . the reasonable expenses incurred in opposing the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(B). The only exceptions to this rule are "if the motion was substantially justified or other circumstances make an award of expenses unjust." *Id.*

The court concludes that the motion was not substantially justified and there are no circumstances here that would make an award of expenses unjust. Thus, counsel for the Greenville Defendants are responsible for payment of the reasonable expenses, including attorney's fees, that Sharpe and the Clinic incurred in responding to the motion to compel.

There is, however, no rule authorizing an award of fees and costs for responding for a motion for to amend a scheduling order. So the court declines to award Sharpe or the Clinic expenses for costs incurred in connection with the subpoena-related motion separate from the motion to compel.

### III. Conclusion

For the reasons above, the court denies Defendants' motion to compel (D.E. 109) and for leave to serve Rule 45 subpoenas (D.E. 122, 124). The court will enter a separate order outlining the process for determining the appropriate amount of expenses Sharpe and the Clinic are entitled to receive.

Dated: May 16, 2024

_____
Robert T. Numbers, II
United States Magistrate Judge