IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

| | |
|---|---|
| **Montoyae Dontae Sharpe**, <br><br> Plaintiff, <br><br> v. <br><br> **R.L. "Ricky Best", Jeffrey D. Shrock & The City of Greenville, North Carolina**, <br><br> Defendants. | No. 4:21-CV-00185-BO |
| **Montoyae Dontae Sharpe**, <br><br> Plaintiff, <br><br> v. <br><br> **Carolyn Melvin**, <br><br> Defendant. | No. 4:22-CV-00088-BO |

**Order**

Plaintiff Montoyae Donte Sharpe asks the court to compel the Defendants to produce additional documents related to work done for them by Shari Huff.[1] Huff was a detective for the Greenville, North Carolina Police Department, who reinvestigated Sharpe's now-vacated murder conviction in 2014.

Given that work, Huff is a fact witness. And, as it turns out, she is also an employee of defense counsel, having been retained to locate and interview various witnesses. Among the

---

[1] Shari Huff is formerly known as Shari Groccia.

individuals Huff contacted in this role was Candice Johnson.[2] For many years, Johnson had made statements that supported Sharpe's claims of innocence. But during her deposition, which occurred after she spoke with Huff, Johnson changed her story and implicated Sharpe in the murder.

The defense has withheld various documents and items from Sharpe, claiming that they are immune from discovery under the work-product doctrine. Sharpe disagrees and argues that the doctrine does not apply, but, if it does, he can satisfy the doctrine's substantial need exception.

After considering the parties' evidence and the arguments, the court finds that the withheld material is subject to the work-product doctrine and that Sharpe has not established a substantial need for the materials. Thus, the motion to compel is denied.

## I.    Background

This case arises out of the Sharpe's 1995 conviction for the murder of George Radcliffe. After several witnesses changed their testimony, a North Carolina Superior Court vacated Sharpe's conviction and the Governor of North Carolina eventually pardoned him. Sharpe has now sued the City of Greenville and several individuals for state and federal constitutional violations that allegedly led to his allegedly wrongful conviction. Compl. ¶ 4, D.E. 1.

At the outset of discovery, Sharpe served initial disclosures that identified Huff as someone likely to have discoverable information he would use to support his claims. Mem. in Supp. of Mot. to Compel at 3 n.1, D.E. 102. Sharpe then deposed Huff in May 2023. Ex. B, D.E. 102–2.

During her deposition, defense counsel shared that the defense had retained Huff as a consultant. Huff Dep. Tr. at 11:4–17. In that role, Huff was asked to locate and speak with individuals who had information on the Radcliffe murder. *Id.* at 15:1–3; 15:20–16:6. Defense

---

[2] Johnson is also known as Candice Whitley.

2

counsel asserted that the attorney-client privilege, work-product doctrine, or the limitation on discovery of information known by non-testifying experts limited what Sharpe could ask Huff about during the deposition. *Id.* at 11:4–17; 12:1–5; 12:16–18; 32:17–21.

After Huff's deposition, Sharpe tried to subpoena documents from Huff related to her work for the defense. Mem. in Supp. at 4, D.E. 102. In response, the Defendants provided some invoices and a privilege log of 69 documents over which they asserted privilege or protection. Ex. C, D.E. 102–3. Included among the materials withheld were Huff's notes of interviews with Candice Johnson and Connie Elks, a detective with the Greenville Police Department. *Id.* Johnson provided exculpatory statements about Sharpe's involvement in the murder in a 1994 interview with Elks. *Id.* But the Defendants did not produce an engagement letter or any other documents setting out Huff's duties.

Several months later, Sharpe deposed Johnson. Mem. in Supp. of Mot. to Compel at 5, D.E. 102; Dep. Tr., D.E. 138. Contrary to statements she had made repeatedly over the prior three decades, Johnson testified that she witnessed Sharpe participate in the murder. Johnson also stated that her prior statements resulted from employees of the Duke University School of Law Wrongful Conviction Clinic offering to pay her to make exculpatory statements.

Sharpe then moved to compel production of the Huff-related documents withheld by the defense. He argues that Huff is the only witness who can establish the circumstances of Johnson's changed statements. And Sharpe maintains that documents and recordings prepared by Huff in 2022 and 2023 are the only direct evidence about Johnson's altered claims. While Sharpe originally sought production of a broad array of documents, at the hearing on this motion, he limited his request an email from Clements; three audio recordings of Candice Johnson; and a

recording of a conversation between Huff and Elks. *See* D.E. 102–3 at ¶ 22, 40; Hr'g Tr. at 29:15–21, 30:15–19, D.E. 147.[3]

## II.      Discussion

The Federal Rules of Civil Procedure allow parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). For discovery, the scope of "relevance is broadly construed 'to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Mainstreet Collection, Inc.* v. *Kirkland's, Inc.*, 270 F.R.D. 238, 240 (E.D.N.C. 2010) (quoting *Oppenheimer Fund., Inc.* v. *Sanders*, 437 U.S. 340, 351 (1978)).

The Rules also allow a requesting party to move to compel if the responding party's discovery responses are incomplete or inadequate. Fed. R. Civ. P. 37(a). The party resisting or objecting to discovery "bears the burden of showing why [the motion to compel] should not be granted." *Mainstreet Collection*, 270 F.R.D. at 241. To meet this burden, the non-moving party "must make a particularized showing of why discovery should be denied, and conclusory or generalized statements fail to satisfy this burden as a matter of law." *Id.*

With this standard in mind, the court turns to Sharpe's motion.

---

[3] Sharpe originally requested factual information about: (1) Huff being approached in March 2022 to assist Defendants' counsel; (2) written or oral agreements between Defendants' counsel and Huff; (3) any agreement to pay Huff for assisting Defendants' counsel; (4) statements between Huff and Candice Johnson in 2022 and 2023; and (5) statements between Huff and Elks about Johnson's statements to Elks in 1994 and Johnson's 2023 statements. Mot. in Supp. of Mot. to Compel at 7. But Sharpe narrowed the materials he seeks at the March 2024 hearing. Evid. Hr'g Tr. at 29:15–21, 30:15–19, D.E. 147.

### A. Sharpe's motion involves the applicability of the work-product doctrine, not the privilege for non-testifying expert consultants.

To begin with, the court must determine the standard that applies to this motion. The Greenville Defendants rely on two portions of the Federal Rules to oppose Sharpe's motion. They claim that the court should deny the motion because the materials are protected by the work-product doctrine, which is governed by Rule 26(b)(3). And they also claim that the motion should be denied because Huff is a non-testifying expert consultant under Rule 26(b)(4)(D). These standards, although distinct, are referenced interchangeably in the Greenville Defendants' brief.

Only the work-product doctrine applies here. That doctrine prohibits discovery of "documents and tangible things that are prepared in anticipation of litigation or for trial[.]" Fed. R. Civ. P. 26(b)(3)(A). The rule about non-testifying experts prohibits discovering "the facts known or opinions held" by that expert through "interrogatories or deposition[.]" *Id.* 26(b)(4)(D). Sharpe's motion seeks to compel production of Huff-related documents and tangible items that the Greenville Defendants withheld. The motion does not seek to compel Huff to disclose facts or opinions through responses to an interrogatory or deposition testimony. Thus, only the work-product doctrine applies to this dispute.

### B. Overview of the work-product doctrine

Under the work-product doctrine, documents prepared "in anticipation of litigation . . . by or for another party or its representative" are generally not discoverable. Fed. R. Civ. P. 26(b)(3)(A).[4] As with the attorney-client privilege, the party invoking the doctrine bears the burden of showing that it applies. *Sandberg* v. *Va. Bankshares, Inc.*, 979 F.2d 332, 355 (4th Cir. 1992).

---

[4] Unlike the attorney-client privilege analysis, federal law controls the work-product analysis. *Westfield Ins.* v. *Carpenter Reclamation, Inc.*, 301 F.R.D. 235, 238 (S.D.W. Va. 2014).

Meeting this burden requires making "this showing with a specific demonstration of facts supporting the requested protection, preferably through affidavits from knowledgeable persons." *E.I. Du Pont de Nemours & Co.* v. *Kolon Indus., Inc.*, No. 3:09-CV-58, 2010 WL 1489966, at *3 (E.D. Va. Apr. 13, 2010) (internal quotations omitted). Ultimately, the court's decision will turn on whether "the 'primary motivating purpose' behind the performance of the work was to assist in the pending or impending litigation." *Burroughs Wellcome Co.* v. *Barr Labs., Inc.*, 143 F.R.D. 611, 617 (E.D.N.C. 1992) (quoting *Application of Minebea Co.*, 143 F.R.D. 494, 499 (S.D.N.Y. 1992)).

Courts distinguish between two types of attorney work-product: fact work-product and opinion work-product. Fact work-product, which consists of documents that lack an attorney's mental impressions, "can be discovered upon a showing of both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship." *In re Grand Jury Proc. #5 Empaneled Jan. 28, 2004*, 401 F.3d 247, 250 (4th Cir. 2005). The party who seeks disclosure of fact work-product must show a "substantial need" for the document. *United States* v. *Bertie Ambulance Serv., Inc.*, No. 2:14-CV-53-F, 2015 WL 3932167, at *7 (E.D.N.C. June 25, 2015) (citing *Republican Party of N.C.* v. *Martin*, 136 F.R.D. 421, 429 (E.D.N.C. 1991)).

Opinion work-product contains an attorney's "mental impressions, opinions, and legal theories[,]" *Duplan Corp.* v. *Deering Milliken, Inc.*, 540 F.2d 1215, 1223 (4th Cir. 1976), and is "more scrupulously protected as it represents the actual thoughts and impressions of the attorney." *In re Grand Jury Proc.*, 401 F.3d at 250. Once a document qualifies as opinion work-product it is immune from discovery, except in "very rare and exceptional circumstances." *In re Allen*, 106 F.3d 582, 607 (4th Cir. 1997).

### C. Applicability of the work-product doctrine to the documents Sharpe seeks.

The record reflects that the Greenville Defendants retained Huff to assist them with their preparation for this litigation. Huff testified that defense counsel contacted her to locate and interview witnesses. Huff. Dep. Tr. at 15:4–16–25. While there is no written agreement, Sharpe has provided no reason to doubt Huff's testimony on this point. Since Huff operated as a representative of the Greenville Defendants, documents and other tangible things she created in that role are entitled to the protections of the work-product doctrine. Fed. R. Civ. P. 26(b)(3) (explaining that the work-product doctrine applies to materials prepared by a "party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)").

Sharpe, however, contends that the Greenville Defendants should still have to produce the documents because it has a substantial need for them. The Greenville Defendants respond that Sharpe cannot show that he has a substantial need for the withheld items because he questioned Johnson at her deposition and had the opportunity to depose Elks.

The Advisory Committee Notes to Rule 26 provide three factors courts should consider when assessing whether special needs justify disclosure of fact work product. First, the "importance of the materials to the party seeking them for case preparation[.]" Fed. R. Civ. P. 26 advisory committee's notes to 1970 amendments subdivision (b)(3). Second, "the difficulty the party will have obtaining them by other means[.]" *Id.* And third, "the likelihood that the party, even if he obtains the information by independent means, will not have the substantial equivalent of the documents he seeks." *Id.*

7

Sharpe's argument on substantial need focuses his interest in "the circumstances under which Candice Johnson, after talking to Huff in 2023, made allegations that were inconsistent with the statements she had made in the previous thirty years." Mem. in Supp. at 10. He says that since Huff is both a witness and a paid member of the defense team, there will be concerns over whether she will testify fully and impartially about this issue. *Id.* Thus, Sharpe claims he "has a substantial need for the documents, notes, or other writings prepared by Huff relating to her conversations with Candice Johnson[.]" *Id.* This is because, according to Sharpe, "Huff is the only witness who can establish when, why, and how Candice Johnson made statements in 2023 that are inconsistent with the statements she made in 1994, 2013, 2014, and 2017." *Id.* at 5.

But Huff is not the only witness who can establish why Johnson changed her testimony in 2023. Johnson can. And when Sharpe's counsel questioned her during her deposition, she did. Johnson explained that her prior statements were false and that she made them at the urging of Sharpe's mother and Sharpe's attorney.[5] Sharpe's counsel then spent much time asking Johnson about her interactions with Huff and defense counsel. Johnson Dep. Tr. at 82:10–98:6.

Despite having the opportunity to question Johnson, there is nothing in the record, beyond speculation, suggesting that Johnson changed her story because of Huff's actions. There is also nothing in the record suggesting that Sharpe was prevented from deposing Elks about her interactions with Huff. So the argument that Sharpe has a substantial need for the audio recordings and related documents to determine why Johnson changed her testimony is unpersuasive. *See Bertie Ambulance Serv.,* 2015 WL 3932167, at *7 ("[I]f a witness is available to the other party,

_____

[5] The court expresses no opinion on the veracity of these statements.

discovery [of fact work product] is generally not allowed."). Sharpe has not established that he cannot obtain similar information by means other than disclosure of Huff's work product.

Sharpe relies on three cases, *New York* v. *Solvent Chem. Co.*, 166 F.R.D. 284 (W.D.N.Y. 1996); *City of Almaty* v. *Ablyazov*, No. 15-CV-05345, 2018 WL 11270087 (S.D.N.Y. 2018); and *In re Healthsouth Corp. Sec. Litig.* v. *UBS AG*, 250 F.R.D 8, 13–14 (D.C. 2008); to support his position. But none of those cases suggest that the court should reach a different conclusion.

The courts in *City of Almaty* and *Solvent Chemical* both found that there was a substantial need to disclose the terms of agreements between a party and a witness to develop whether the witness was biased. *City of Almaty*, 2018 WL 11270087, at *6 (finding a substantial need existed for production of an engagement letter and agreement "to demonstrate bias of . . . one of Plaintiffs' key witnesses"); *Solvent Chem.*, 166 F.R.D. at 289–91 (allowing discovery of consulting agreement between party and witness to establish the witness's bias). In contrast, there is no evidence that Johnson has entered into any kind of agreement with the Greenville Defendants. To the contrary, she has testified that neither Huff nor defense counsel promised her anything. Johnson Dep. Tr. at 72:12–13.

*In re HealthSouth Corp.* also provides no assistance to Sharpe. In that case, a dispute arose over a deponent's statements to the FBI. *In re HealthSouth Corp.*, 250 F.R.D. at 9. During the witness's FBI debrief, both the FBI and the witness's attorney had made notes about the conversation. *Id.* During his deposition, the witness disputed the accuracy of the FBI's interview report and said that his attorney's notes accurately reflected what he told the FBI. *Id.* at 9–10. Given the importance to the case of knowing what the witness told the FBI and the witness's

statement that the FBI's report contained false information but his attorney's did not, the court found it appropriate to order the attorney to produce the attorney's notes. *Id.* at 13–14.

The facts here are materially different. Disclosing the audio recordings and related documents may reveal what Johnson told Huff. But unlike in *In re HealthSouth Corp.*, there is no dispute over the content of that conversation. Instead, the dispute is over which of Johnson's conflicting statements about Sharpe's involvement in George Radcliffe's murder are true. So while disclosing the attorney notes in *In re HealthSouth Corp.* would have informed the disputed matter, there is no sign that disclosing work product here would do so. So *In re HealthSouth Corp.* does not justify finding a substantial need for production of fact work product here.

Sharpe's motion is based on the premise that Huff engaged in witness tampering and offered some sort of inducement to get Johnson to change her testimony.[6] *See* Mem. in Supp. at 5–6 (explaining that the withheld documents are needed to assess "whether and how Huff influenced Candice Johnson to change" her testimony). But aside from pointing out the unusual (and poorly documented) decision by defense counsel to retain someone who is obviously a fact witness as an investigator, Sharpe provides no support for the premise that something untoward occurred that caused Johnson to change her testimony.

Without tangible evidence of wrongdoing, however, these sorts of allegations are not enough to overcome protections of the work-product doctrine. If they were, the court would need (upon request) to require the Clinic to disclose much of its work product since it has been alleged, under oath, that its employees bribed Johnson to provide exculpatory testimony for Sharpe. The

---

[6] This allegation is a serious one. Witness tampering of this sort is a federal offense punishable by up to 20 years in prison. 18 U.S.C. § 1512(b).

argument could be made that without examining all the Clinic's notes, emails, and recordings, the defendants could never be certain that chicanery was not afoot. Given the ease with which such allegations can be made and the difficulty of disproving them, a party must back up its allegations with evidence before it can overcome the work-product doctrine.

The court thus concludes that the audio tapes and related documents qualify as work product. And it also concludes that Sharpe has not shown a substantial need for them. Thus, the motion to compel is denied.

## III. Conclusion

For the reasons above, the court denies Sharpe's motion to compel (D.E. 101). Each party will bear their own costs related to this motion.[7] Fed. R. Civ. P. 26(c)(3) & 37(a)(5).

Dated: May 17, 2024

_Robert T. Numbers II_
Robert T. Numbers, II
United States Magistrate Judge

---

[7] While Rule 37(a)(5)(B) entitled Defendants to recover the reasonable expenses, including attorney's fees, incurred in responding to the motion, they did not request that the court award them those expenses.

11