# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
Civil No: 4:21-CV-00185-BO

| | |
|---|---|
| MONTOYAE DONTAE SHARPE,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>DAVID RICKY BEST, JEFFREY D. SHROCK, and THE CITY OF GREENVILLE, NORTH CAROLINA,<br><br>　　　　　Defendants. | **PLAINTIFF'S RESPONSE TO DEFENDANT MELVIN'S STATEMENT OF MATERIAL FACTS<br>AND<br>PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS** |
| MONTOYAE DONTAE SHARPE,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>CAROLYN MELVIN,<br><br>　　　　　Defendant. | Civil No: 4:22-CV-00088-BO-RJ<br>(Consolidated with 4:21-cv-00185-BO) |

　　　Plaintiff Montoyae Dontae Sharpe, by and through undersigned counsel, and pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 56.1(a)(2) of the Local Rules for the Eastern District of North Carolina, respectfully submits this response to Defendant Carolyn Melvin's "Statement of Material Facts" (D.E. 185).

　　　Plaintiff's Statement of Undisputed Material Facts (D.E. 170) will be cited as "PSF ¶ ____."

　　　Plaintiff's Appendix (D.E. 171) will be cited as "Pl. Appx., p. ___:___."

　　　Plaintiff's Appendix in response to all Defendants' Motions for Summary Judgment will be cited as "Pl. Resp. Appx., p. ___:___" (Plaintiff's Response Appendix).

1

References to Melvin's Appendix (D.E. 201) will be cited as "Melvin Appx., p. \_\_\_:\_\_\_."

References to Best's, Shrock's, and City of Greenville's Appendix (D.E. 191) will be cited simply as "Best Appx., p. \_\_\_:\_\_\_."

Plaintiff responds to Melvin's Statement of Undisputed Material Facts as follows:

1. It is **disputed** that George Radcliffe was attempting to buy crack cocaine at the time he was murdered. It is further disputed that Sharpe sold drugs on 6th Street where Radcliffe was murdered.

    **Additional Material Facts:**

    It is disputed that what Wilbur Mercer told the Greenville police about Radcliffe trying to buy crack cocaine was truthful or accurate, or that Wilber Mercer was a credible source of information. Melvin Appx. B, pp. Sharpe 3708-3709; Melvin Appx. B, pp. Sharpe 3686-3689; Pl. Appx. W, pp. 25:24 through 26:1 (Mercer's statements, read in conjunction, show that Mercer gave facially inconsistent accounts of his interaction with the victim to the Greenville Police Department ("GPD"). Melvin considered Mercer the "prime suspect" in the murder after his bloody coat was found in the victim's truck.) Mercer's desire to protect himself from being charged undermines the credibility of his statements. Melvin herself did not believe Mercer's statements. Pl. Appx. W, p. 25:23-25. Furthermore, Melvin herself testified under oath in this case that "Dontae Sharpe did not sell drugs on the street," and that the area where Radcliffe was murdered "was not [Sharpe's] area. He wouldn't have been in that area." Pl. Appx. X, p. 58:10-13.

2. It is **disputed** that after arriving the crime scene on February 11, 1994, Melvin "canvassed the neighborhood looking for leads and witnesses."

**Additional Material Facts:**

Neither the police file nor any police report reflects that a canvass was done by Melvin on February 11, 1994. Melvin Appx. B, pp. Sharpe 3707-3709 (GPD Incident/Investigation Report dated February 11, 1994, which discloses on page 3 of 4 that Melvin "responded to the scene," but which does not state that Melvin took any other action while at the scene); Melvin Appx. B, p. Sharpe 3703 (GPD "Major Case Notes" that are devoid of any action ascribed to Melvin for the dates February, 11, 12, 14, and 16, 1994).

3. It is **disputed** that on February 12, 1994, Melvin submitted evidence collected from the Radcliffe homicide scene to the property division. Melvin Appx. B, p. Sharpe 3704, does not support this fact. The officer referred to in this document is GPD Ofc. Mendenhall, not Melvin.

4. It is **disputed** that Mercer was helping Radcliffe buy crack cocaine.

**Additional Material Facts:**

*See* Plaintiff's response in paragraph 1, *supra*.

5. It is admitted that Melvin's notes reflect statements that Stewart allegedly made to her on February 14, 1994, three days after the murder, but it is **disputed** that these notes are admissible in evidence at the trial of this case.

**Additional Material Facts:**

Stewart, who lived in the same neighborhood as Dontae Sharpe, could not identify the two black males who approached Radcliffe's truck. Melvin Appx. B, p. Sharpe 5029.

6. It is admitted that on February 15, 1994, Best was assigned by Chief Hinman to assist Melvin.

**Additional Material Facts:**

When Best was called to the Chief's office and told he was going to be assigned to the Radcliffe murder case, Best declined, given that his work load was already too great. Pl. Appx. T, pp. 78:8 through 79:1–17. The Chief of Police told Best that he (Best) had to take on the case or his employment would be terminated. *Id*. Melvin's work load was also such that she could not handle the case without assistance. Pl. Appx. X, p. 54:8-23; *see also* Pl. Resp. Appx. A, Transcript of Depo. Ex. 187, portion of video documentary interview with Melvin in which Melvin states: " . . . based on my workload, I needed some assistance. . . . Detective Ricky Best was assigned with me.").

7. It is admitted that Detective Melvin wrote notes of what Alonzo Vines allegedly told her on February 16, 1994. However, it is **disputed** that these notes are admissible in evidence at the trial of this case.

**Additional Material Facts:**

Melvin's notes do not reflect the race of the two males Vines allegedly observed standing around Radcliffe's truck, and do not reflect that Vines identified either person. Melvin Appx. B, pp. Sharpe 3690-3691 (filed out of sequence in Melvin's Appendix).

4

8. It is admitted that Detective Best submitted evidence seized from the crime scene to the SBI lab.

**Additional Material Facts:**

None of this evidence tied Dontae Sharpe to the murder of George Radcliffe. Pl. Appx. W, pp. 21:25 through 22:1-3; Pl. Appx. U, p. 203:9-11.

9. It is admitted that on February 16, 1994, Best and Melvin interviewed Trisha Radcliffe.

**Additional Material Facts:**

Radcliffe provided no evidence regarding the murder of her husband. Melvin Appx. B, p. Sharpe 3702.

10. It is admitted that on February 24, 1994, Melvin interviewed Nathan Farmer.

**Additional Material Facts:**

Farmer provided no evidence regarding the murder of George Radcliffe. Melvin Appx. B, p. Sharpe 3701.

11. It is **disputed** that "Melvin was not involved in any manner with Charlene Johnson's interaction with Defendant Shrock."

**Additional Material Facts:**

Melvin testified in her deposition that she did have interaction with Shrock regarding Charlene Johnson. Pl. Appx. W, p. 34:16-20; Pl. Appx. X, p. 58:3-7.

12. It is admitted that at the time of the Radcliffe murder, Melvin suffered from Graves' disease.

**Additional Material Facts:**

Melvin was also an alcoholic who suffered from memory loss as a result of her alcohol abuse. Pl. Appx. BB, pp. 313-314.

13. It is **disputed** that on April 7, 1994, Shrock told Best that Charlene Johnson "knew who killed the white man."

**Additional Material Facts:**

Neither Best nor Shrock wrote any notes or prepared any report stating that Shrock told Best that Johnson "knew who killed the white man." Pl. Appx. Y, pp. 99:2 through 100:1-7. Shrock has admitted that his testimony at Sharpe's 1997 MAR hearing regarding his introduction of Johnson to Best was not true. *See* PSF ¶¶ 39 – 82 (showing that Shrock's testimony at the 1997 MAR was false, that Shrock admitted that his testimony was false, and that documentary evidence confirm that Shrock's 1997 testimony was false).

14. It is admitted that Best and Melvin initially thought Shrock was referring to Candice Johnson, but eventually realized Shrock was referring to Charlene Johnson and took Charlene to the Brown Building for an interview. It is **disputed** that this is a material fact.

15. It is admitted that Charlene Johnson was placed in an interview room and wrote out a statement about the murder of George Radcliffe. It is **disputed** that this statement was accurate and truthful.

**Additional Material Facts:**

Beginning in September 1995 following the July 1995 trial of Sharpe, and continuing up to the present, Charlene Johnson has repeatedly maintained, and stated under oath in the form of affidavits, depositions, and in-court testimony, that the written statements signed by her were not true. Shortly after Dontae Sharpe was convicted, Charlene Johnson told Kay Lambert, a paralegal for Cherry Stokes, Sharpe's trial attorney, that she (Charlene) had lied at the trial. Pl. Appx. MM, p. 58:9-16. Charlene told Lambert that she (Charlene) "wasn't there" (when the shooting occurred); that Best had given her and her family a lot of gifts; that Best and the GPD gave her money; and that Beatrice Stokes didn't tell the truth either." Pl. Appx. MM, p. 59:15-20. On April 18, 1996, Charlene told Tina Lyda, the secretary and legal assistant for Sharpe's appellate lawyer, "Everything I said on the stand was a lie." Pl. Appx. P, Pitt Co. 203-211 (*see* Pitt Co. 207). Charlene told Lyda that she had not even been at the scene of the murder. *Id*. (*see* Pitt Co. 209). On September 10, 1996, Charlene signed an affidavit reiterating that her trial testimony had been a lie and that she had not witnessed George Radcliffe's murder. *Id.*, Pitt Co. 203-211. Charlene has been adamant and steadfast in her recantation since that time. Pl. Appx. OO, GPD 135-181 (2014 GPD Interview with Charlene Johnson); Pl. Appx. QQ, p. 8:1-7; Pl. Appx. V, p. 121:19-25. Melvin herself did not believe at the time that Charlene's written statement was truthful. Pl. Appx. W, p. 34:16-17 (Best knew that Melvin did not believe Charlene's account); Pl. Appx. X, p. 58:3-9 (admitting that the information provided by Charlene "wasn't adding up").

7

16. It admitted that Charlene Johnson was given a clean sheet of paper. It is **disputed** that the statement that was written on that paper was accurate and truthful.

**Additional Material Facts:**

*See* Plaintiff's response in paragraph 15, *supra*.

17. It is admitted that Charlene Johnson stated during her deposition that she currently does not recall seeing Melvin at the Brown Building on April 7, 1994. However, it is **disputed** that Melvin was not present at the Brown Building on April 7, 1994.

**Additional Material Facts:**

During her deposition, Charlene Johnson cautioned that her lack of memory regarding Melvin's presence at the Brown Building on April 7, 1994, should not be viewed as an indication that Melvin was not present. Pl. Appx. V, p. 41:5-8. Melvin testified in her deposition that in fact she *was present* for the interaction with Charlene Johnson at the Brown Building on April 7, 1994. Pl. Appx. W, p. 36:3-6; Pl. Appx. X, p. 56:11-12; p. 72:3-6.

18. It is admitted that there is a statement in Charlene Johnson's handwriting dated April 7, 1994, that reflects a time of 1:30 pm. It is **disputed** that this statement was accurate or truthful.

**Additional Material Facts:**

See Plaintiff's response in paragraph 15, *supra*.

19. It is admitted that Best spoke to Charlene Johnson after she wrote the statement at 1:30 pm on April 7, 1994. It is **disputed** that Best only told Charlene to "write down more."

**Additional Material Facts:**

See Plaintiff's response in paragraph 15, *supra*. Furthermore, Charlene Johnson testified in her deposition that Best told her what to write for her second statement. Pl. Appx. V, p. 40:14-20; p. 90:7-18.

20. It is **disputed** that Melvin was not present when Best spoke to Charlene Johnson after she wrote the statement at 1:30 pm on April 7, 1994.

**Additional Material Facts:**

Melvin testified in her deposition that she was present for the interaction between Best and Charlene Johnson at the Brown Building on April 7, 1994. Pl. Appx. W, p. 36:3-8; Pl. Appx. X, p. 56:11-12.

21. It is admitted that there is a statement in Charlene Johnson's handwriting dated April 7, 1994, that reflects a time of 1:34 pm. It is **disputed** that this statement was accurate or truthful.

**Additional Material Facts:**

See Plaintiff's response in paragraph 15, *supra*.

22. It is admitted that Melvin wrote the note quoted in paragraph 22. It is **disputed** that Melvin believed what Charlene Johnson had said.

**Additional Material Facts:**

See Plaintiff's response in paragraph 15, *supra*. Additionally, Melvin has testified that she did not believe Charlene's account was truthful. Pl. Appx. W, p. 34:16-17; Pl. Appx. X, p. 58:1-19.

23. It is admitted that Plaintiff and Mark Joyner were arrested and charged with the Radcliffe murder after Charlene wrote her two statements. It is **false** that the arrests were made "several hours" after the statements were written. PSF ¶ 98. It is **disputed** that

Charlene witnessed the murder (Pl. Appx. MM, pp. 8:24 through 9:1-6; p. 20:22-23) or that Mark Joyner was an accomplice (Pl. Resp. Appx. B, Joyner Depo., p. 84:17-20, stating in sworn testimony that he did not know who killed Radcliffe and was not involved).

24. It is admitted that Best made handwritten notes of a statement Plaintiff made denying any involvement in the Radcliffe murder and providing evidence of an alibi during the time of the murder.

**Additional Material Facts:**

Neither Melvin nor Best attempted to interview the alibi witnesses identified by Plaintiff. PSF ¶ 110.

25. It is admitted that between February 11, 1994, and April 7, 1994, Carolyn Melvin missed work due to health reasons.

**Additional Material Facts:**

Melvin's health reasons included the consequences of her alcoholism. PSF ¶ 23.

26. It is admitted that Best was the only witness who testified before the grand jury that indicted Sharpe and Joyner on April 18, 1994.

**Additional Material Facts:**

The only evidence presented by Best to the grand jury was Charlene Johnson's April 7, 1994, statement. Pl. Appx. T, p. 201:20-22 (Best stating that he presented "the evidence that we possessed" to the grand jury); Pl. Appx. W, p. 22:1-3 (Melvin stating that the only evidence at the time of the arrest inculpating Plaintiff consisted of Charlene's statement).

27. It is admitted that a polygraph was administered to Charlene Johnson on April 19, 1994, the day after Plaintiff was indicted.

**Additional Material Facts:**

The results of that polygraph were inconclusive with regard to the truthfulness of Johnson's April 7, 1994, statements. Pl. Appx. T, pp. 309:19 through 310:1-2 (Best admitting that the polygraph was inconclusive).

28. It is **disputed** that the encounter between Best and Stokes occurred in the manner described.

**Additional Material Facts:**

Best wrote no notes or reports about the alleged interaction, PSF ¶¶ 125, 126, despite knowing that "all interviews" should go into a lead detective's report. *Id.* at ¶ 127. The District Attorney testified in his deposition that he was not aware of another case where Best had not written a report about a witness who he claimed was an eyewitness to a murder. *Id*. at ¶ 131. Melvin testified in her deposition that the alleged encounter between Best and Stokes in which Stokes got in Best's patrol car but refused to let him take notes *did not actually happen*. *Id*. at ¶ 132. Melvin also testified that Best brought in Beatrice Stokes as a witness because Melvin did not believe Charlene Johnson's account was true. Pl. Appx. W, p. 34:14-22; Vol II, pp. 16:23 through 17:1-2. Melvin, who was named as the lead detective, did not even meet Stokes until the first day of trial. Pl. Appx. W, p. 16:1-4. In a sworn affidavit witnessed by two members of the Greenville City Council, Stokes alleged that Best had told her what to say and paid her to

say it. Pl. Resp. Appx. C, Depo. Ex. 86, Sharpe 3747, 3749. Stokes's recantation was given and signed in front of Defendant Melvin, as well as Pitt County Commissioners Rose Glover and Arielle Morris. Pl. Appx. W, p. 63, lines 6–23; Pl. Appx. U, p. 274:19 through 275:1–5; Pl. Resp. Appx. C, Depo. Ex. 86, Sharpe 3747, 3749.

29. It is admitted that Melvin was not present for what Best claimed was his first alleged interaction with Stokes about the Radcliffe murder in his patrol car, and that Melvin did not meet Stokes until the first day of trial.

**Additional Material Facts:**

Melvin did not believe that the alleged meeting between Best and Stokes even took place. Pl. Appx. W, p. 33:22-25.

30. It is admitted that on August 29, 1994, a polygraph examination was administered to Plaintiff. It is **disputed** that the results were reliable or material to any claim against Defendants.

31. It is admitted that Plaintiff was tried for the murder of George Ratcliffe in July 1995, that he was represented by attorney Cherry Stokes, and that the state was represented by Clark Everett.

32. It is admitted that the state called as witnesses Charlene Johnson, Alonzo Vines, Kenneth Denton, crime-scene technician Ralph Mendenhall, Medical Examiner Mary Gilliland, T. R. Trochum, Beatrice Stokes, Detective Best, and Detective Melvin.

**Additional Material Facts:**

Alonzo Vines did not identify Plaintiff as being present at the time of the murder. Pl. Appx. KK, p. 93:2 ("I couldn't see in the face"); p. 94:1 (" . . . I couldn't see any face. I don't know if it's a lady or either a man.").

Kenneth Denton was a first-responder at the scene who testified that Radcliffe's body was found in the truck, with "[h]is feet . . . on the driver's side with his head and his body . . . slumped over into the foot [*sic*] of the passenger side of the truck." Pl. Appx. KK, p. 102:11-13. He gave no testimony implicating Sharpe in the murder.

Crime-scene technician Ralph Mendenhall testified that he processed the truck for evidence, including fingerprints, and did not identify any physical evidence tying Plaintiff to the murder. *Id.*, p. 151:1-3. Mendenhall also testified that he found Wilbur Mercer's blood-stained coat in the victim's truck, and that Mercer tried to get the coat back from the police. *Id.*, p. 133:11-18. He gave no testimony implicating Sharpe in the murder.

Medical Examiner Dr. Mary Gilliland testified as to the case and manner of death. She provided no testimony implicating Sharpe in the murder. *Id.*, pp. 165-194.

Dr. Gilliland subsequently provided an Affidavit in connection with Sharpe's 2018 MAR in which she stated that the trial testimony of Charlene Johnson, of which she was unaware at the time of her own trial testimony, was inconsistent with the autopsy findings, and that it was "medically and scientifically impossible that the murder of Mr. Radcliffe could have

occurred as testified to by Ms. Johnson." Pl. Resp. Appx. D, Depo. Ex. 139, Sharpe 11190, ¶ 6.

T. R. Trochum was an SBI special agent assigned to the SBI crime lab in Raleigh. He testified that he received three shell casings from the GPD in February 1994 and a .45-caliber Haskell-brand pistol in April 1994 from the GPD. He testified that he was unable to conclude that the bullet that killed Radcliffe had been fired by the .45-caliber weapon. Pl. Appx. KK, p. 212:15-24. He did not identify any physical evidence tying Plaintiff to the murder.

There was no direct evidence tying Plaintiff to the murder other than the testimony of Charlene Johnson and Beatrice Stokes. Pl. Appx. W, pp. 21:25 through 22:1-3; Pl. Appx. T, p. 203:9-11. Johnson and Stokes subsequently recanted their trial testimony. *See* Plaintiff's responses to paragraphs 15 and 28, *supra.*

Best and Melvin testified to the statements Charlene Johnson and Beatrice Stokes subsequently recanted. *See* Plaintiff's responses to paragraphs 15 and 28, *supra.*

33. It is admitted that Plaintiff's attorney only called Patricia Ward, Patricia Hicks, and Angela Sutton as defense witnesses. It is disputed that this is material to any of the claims against Melvin.

34. It is admitted that Charlene Johnson *testified* at Dontae Sharpe's trial as set forth in paragraph 34. It is **disputed** that her testimony at the trial was truthful or accurate.

**Additional Material Facts:**

Counsel for Sharpe asked Charlene about the relative positions of the men 12 times, and in answer to the first ten questions on this issue, Charlene stated the men were "face to face" and confirmed that there was "no doubt in [her] mind." The eleventh time counsel for Sharpe asked the question, Charlene stated, "I don't know if the white man turnt. I don't know if it was straight up or not." Then, in response to the follow-up question by Sharpe's counsel, "Your best recollection, you believe they were face to face?", Charlene responded, "Yes, I do." Pl. Appx. KK, pp. 56:18 through 57:16; p. 69:12-5; p. 73:5-21.

35. It is admitted that Beatrice Stokes testified that she saw Sharpe and Joyner around Radcliffe's truck, that she saw a spark and heard a gun go off, and that she saw Sharpe holding a gun. It is **disputed** that this testimony was truthful or accurate.

**Additional Material Facts:**

Stokes admitted her testimony at Sharpe's trial was false in an affidavit sworn to before two members of the Greenville City Council. Pl. Resp. Appx. C, Depo. Ex. 86, Sharpe 3747, 3749; Pl. Appx. W, p. 63:6-23; Pl. Appx. U, pp. 274:19 through 275:1-5.

36. It is admitted that the jury heard evidence that Stokes was a crack cocaine user.

**Additional Material Facts**:

The jury did not hear evidence that at the time Stokes allegedly met with Best and agreed to provide inculpatory evidence against Sharpe, Stokes was facing charges for possession of drug paraphernalia, providing fictitious

information to an officer, and disorderly conduct. Pl. Appx. H; Pl. Appx. T, p. 209:4-25.

37. It is admitted that the jury convicted Sharpe of first-degree murder and that he was sentenced to life in prison. It is **disputed** that Sharpe was in fact guilty.

**Additional Material Facts**:

Sharpe's conviction was vacated by a Superior Court Judge and Governor Roy Cooper granted Sharpe a Pardon of Innocence. D.E. 53, ¶ 2. Melvin has testified that Mr. Sharpe is innocent and that she never believed he was guilty of the murder of George Radcliffe. Melvin Appx. C; Pl. Appx. X, p. 60:22-24 (stating under oath: "I never believed Dontae was guilty. . . . I have never believed he was guilty.").

38. It is admitted that Melvin resigned from the Greenville Police Department effective December 28, 1995.

39. It is admitted that Charlene Johnson has recanted her trial testimony. It is **disputed** that Charlene's recantation did not come until "many months after Sharpe's trial."

**Additional Material Facts**:

Johnson first recanted her trial testimony in a conversation with Cherry Stokes's assistant in September 1995 after the July 1995 trial. Pl. Appx. MM, p. 64:7-13; pp. 55:24 through 56:1-10. Charlene subsequently signed an affidavit recanting her testimony, Pl. Appx. P, p. Pitt Co. 207 (unnumbered), and has since testified under oath on a number of occasions that her trial testimony was not true. Pl. Appx. OO, p. GPD 135-181; Pl. Appx. QQ, pp. 5-51; Pl. Appx. V, p. 121:19-25.

40. It is admitted that Plaintiff's Motions for Appropriate Relief were denied in 1997, 2001 and 2014.

### Additional Material Facts:

Defendants Shrock and Best provided false testimony during the post-conviction hearing. *See* PSF ¶¶ 56-65; 170-171; 174-177.

41. It is admitted that Plaintiff filed a Motion for Appropriate Relief in 2018 which was granted in part, and that an evidentiary hearing was held on the merits of the motion.

42. It is admitted that Dontae Sharpe's conviction was vacated by the Superior Court of Pitt County, that the Pitt County District Attorney dismissed the charges against Sharpe the same day, and that he was released from prison.

### Additional Material Facts:

Dontae Sharpe was subsequently given a Pardon of Innocence by Governor Roy Cooper, who made the following statement:

"I have carefully reviewed Montoyae Dontae Sharpe's case and am granting him a Pardon of Innocence. . . . Mr. Sharpe and others who have been wrongly convicted deserve to have that injustice fully and publicly acknowledged." D.E. 53, ¶ 3.

Respectfully submitted, this 3rd day of October, 2024.

/s/ David S. Rudolf
David S. Rudolf, NCSB # 8587
Sonya Pfeiffer, NCSB # 37300
Phillip Lewis NCSB # 27944
Pfeiffer Rudolf
2137 South Boulevard, Suite 300
Charlotte, NC 28203
Telephone: (704) 333-9945

dsr@pr-lawfirm.com
spf@pr-lawfirm.com
pel@pr-lawfirm.com
ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing using the CM/ECF system. Notice of filing will be sent to all parties by operation of the Court's electronic filing system.

This 3rd day of October, 2024.

                                          /s/ David S. Rudolf
                                          David S. Rudolf